**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAQUELINE DUSHAJ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLOWERS FOODS, INC. and FLOWERS BAKERIES, LLC,<br><br>Defendants. | Civil Action No. 7:25-cv-05465<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jaqueline Dushaj ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Flowers Foods, Inc. and Flowers Bakeries, LLC (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except for those allegations pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1. This is a class action on behalf of purchasers of Defendants' Nature's Own brand bread products (the "Product" or "Products") that claim to "NEVER [contain] any artificial preservatives, colors, or flavors" (the "Representation").[1]

2. This Representation is false and/or misleading because the Products contain ascorbic acid – a well-known preservative commonly used in food products.

3. Defendants' Representation is featured on the Products' labeling in order to induce

[1] The Products include the following Nature's Own brand breads: Honey Wheat, 100% Whole Wheat, Butterbread, 100% Whole Grain, Whitewheat, Hawaiian, Ancient Grain Small Loaf, Homestyle White Small Loaf, Hawaiian Small Loaf, 100% Whole Wheat Small Loaf, Sourdough Small Loaf, Hamburger Butter Buns, Hot Dog Butter Buns, and 100% Whole Wheat Hamburger Buns.

health-conscious consumers to purchase food products that are free from preservatives. Defendants market their Products in a systematically misleading manner by misrepresenting that the Products do not contain preservatives.

4. Defendants have profited unjustly as a result of their deceptive conduct. Plaintiff therefore asserts claims on behalf of herself and similarly situated purchasers for violation of New York General Business Law §§ 349 and 350, breach of express warranty, and unjust enrichment.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendants.

6. This Court has personal jurisdiction over Defendants because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York. This Court also has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

7. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Jaqueline Dushaj is a citizen of New York who resides Middletown, New York. Plaintiff Dushaj has purchased the Products on numerous occasions over the last three years

from a Price Chopper store in Middletown, NY. Most recently, in or around May 2024, Plaintiff Dushaj purchased Nature's Own Honey Wheat bread from a Price Chopper store in Middletown, NY. In purchasing the Product, Plaintiff Dushaj relied on Defendants' false, misleading, and deceptive marketing of the Product as "NEVER any artificial preservatives, colors, or flavors." Plaintiff Dushaj understood "NEVER any artificial preservatives, colors, or flavors" meant the Product did not contain any preservatives. However, the Product she purchased contained the preservative ascorbic acid. Had Plaintiff Dushaj known the "NEVER any artificial preservatives, colors, or flavors" representation was false and misleading, she would not have purchased the Product, or, at the very least, would have only been willing to purchase the Product at a lesser price.

9. Defendant Flowers Foods, Inc. is a corporation organized under the laws of Georgia with its principal place of business located at 1919 Flowers Circle, Thomasville, GA 31757. Defendant Flower Foods, Inc. is the second-largest producer and marketer of packaged bakery foods in the United States.

10. Defendant Flowers Bakeries, LLC is a limited liability company organized under the laws of Georgia and maintains its principal executive offices at 1919 Flowers Circle, Thomasville, GA 31757. For purposes of diversity, Defendant Flowers Bakeries, LLC's sole member is Defendant Flower Foods, Inc.

11. Defendants manufacture, package, label, advertise, market, distribute and/or sell the Products in New York and throughout the United States. Defendants, at all times material hereto, conducted business in New York, maintained agents for the customary transaction of business in New York, and conducted substantial and not isolated business activity within this state.

## FACTUAL BACKGROUND

### A. Defendants Misrepresent that there is "NEVER Any Artificial Preservatives" in the Products

12. Defendants advertise on the label of the Products that there are "NEVER any artificial preservatives" in the Products. However, the Products contain ascorbic acid, which is a well-known preservative.

13. The label for Nature's Own Honey Wheat bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:





**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, WHOLE WHEAT FLOUR, YEAST, HONEY, SUGAR, WHEAT GLUTEN, WHEAT BRAN, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: SALT, CULTURED WHEAT FLOUR, SOYBEAN OIL, MONOGLYCERIDES, CALCIUM SULFATE, MONOCALCIUM PHOSPHATE, ENZYMES, ASCORBIC ACID, SOY LECITHIN. 1207-071724
**CONTAINS: WHEAT, SOY.**
**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

14. The label for Nature's Own 100% Whole Wheat bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:





**INGREDIENTS:** WHOLE WHEAT FLOUR, WATER, YEAST, BROWN SUGAR, WHEAT GLUTEN, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: SALT, CULTURED WHEAT FLOUR, SOYBEAN OIL, VINEGAR, DISTILLED MONOGLYCERIDES, ENZYMES, MONOCALCIUM PHOSPHATE, ASCORBIC ACID, SOY LECITHIN. MAY BE TOPPED WITH WHEAT BRAN. 741-021522
**CONTAINS: WHEAT, SOY.**
**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

15. The label for Nature's Own Butterbread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:





**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, SUGAR, YEAST, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: BUTTER* (MADE FROM MILK), CULTURED WHEAT FLOUR, WHEAT GLUTEN, SALT, CALCIUM SULFATE, MONOCALCIUM PHOSPHATE, VINEGAR, ENZYMES, ASCORBIC ACID, SOY LECITHIN.
*A TRIVIAL SOURCE OF CHOLESTEROL. 1227-071624
**CONTAINS: WHEAT, SOY, MILK.**
**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

16. The label for Nature's Own 100% Whole Grain bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** WHOLE WHEAT FLOUR, WATER, WHEAT GLUTEN, SUGAR, YEAST, BROWN SUGAR, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: FLAX SEED, WHOLE RYE FLOUR, SALT, ROLLED OATS, SOYBEAN OIL, BARLEY FLAKES, TRITICALE FLOUR, CULTURED WHEAT FLOUR, SUNFLOWER SEED, VINEGAR, MONOGLYCERIDES, ENZYMES, ASCORBIC ACID, WHEAT STARCH, WHOLE AMARANTH, HULLED WHOLE MILLET, WHOLE KHORASAN WHEAT FLOUR, WHOLE BROWN RICE FLOUR, WHOLE BUCKWHEAT FLOUR, WHOLE MILLED CORN, WHOLE SPELT FLOUR, MONOCALCIUM PHOSPHATE, SOY LECITHIN, CALCIUM SULFATE. TOPPED WITH WHOLE AMARANTH SEED, FLAXSEED, AND WHEAT BRAN. 1224-010915

17. The label for Nature's Own Whitewheat bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, SUGAR, WHEAT GLUTEN, CELLULOSE, YEAST, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: CALCIUM SULFATE, SALT, CULTURED WHEAT FLOUR, SOYBEAN OIL, CALCIUM CARBONATE, GUAR GUM, MONOGLYCERIDES, VINEGAR, MONOCALCIUM PHOSPHATE, ENZYMES, ASCORBIC ACID, SOY LECITHIN. 1892-022122
**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

18. The label for Nature's Own 100% Whole Wheat with Honey bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** WHOLE WHEAT FLOUR, WATER, WHEAT GLUTEN, YEAST, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: BROWN SUGAR, HONEY, CULTURED WHEAT FLOUR, SOYBEAN OIL, SALT, VINEGAR, DISTILLED MONOGLYCERIDES, ENZYMES, MONOCALCIUM PHOSPHATE, ASCORBIC ACID, SOY LECITHIN, TOPPED WITH WHEAT BRAN. 1714-091024
**CONTAINS: WHEAT, SOY.**
**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

19. The label for Nature's Own Hawaiian bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:





**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, SUGAR, YEAST, WHEAT GLUTEN, PINEAPPLE JUICE CONCENTRATE, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: SOYBEAN OIL, SALT, CULTURED WHEAT FLOUR, MONOGLYCERIDES, BUTTER* (MADE FROM MILK), MONOCALCIUM PHOSPHATE, ENZYMES, ASCORBIC ACID, SOY LECITHIN.
*A TRIVIAL SOURCE OF CHOLESTEROL. 749-012622
**CONTAINS: WHEAT, SOY, MILK.**
**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

20. The label for Nature's Own Ancient Grain Small Loaf bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:





**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, BROWN SUGAR, SOURDOUGH (WATER, FERMENTED WHEAT FLOUR, FERMENTED RYE FLOUR, VINEGAR), YEAST, WHEAT GLUTEN, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: WHEAT BRAN, SOYBEAN OIL, SALT, FLAX SEEDS, OAT GRAINS, RYE GRAINS, WHEAT GRAINS, CULTURED WHEAT FLOUR, MILLET, TEFF, SUNFLOWER LECITHIN, ENZYMES, ASCORBIC ACID, SOY LECITHIN. 807-010824
**CONTAINS: WHEAT, SOY.**
**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

21. The label for Nature's Own Homestyle White Small Loaf bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:





**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, ENRICHED SEMOLINA (DURUM WHEAT, NIACIN, FERROUS SULFATE, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), SUGAR, YEAST, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: SOYBEAN OIL, WHEAT GLUTEN, SALT, VINEGAR, CULTURED WHEAT FLOUR, SUNFLOWER LECITHIN, ENZYMES, ASCORBIC ACID, SOY LECITHIN. 806-110124
**CONTAINS: WHEAT, SOY.**
**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

22. The label for Nature's Own Hawaiian Small Loaf bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, SUGAR, YEAST, WHEAT GLUTEN, PINEAPPLE JUICE CONCENTRATE, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: SOYBEAN OIL, SALT, CULTURED WHEAT FLOUR, VINEGAR, ENZYMES, ASCORBIC ACID, SOY LECITHIN. 320-011325

**CONTAINS: WHEAT, SOY.**

**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

23. The label for Nature's Own 100% Whole Wheat Small Loaf bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** WHOLE WHEAT FLOUR, WATER, WHEAT GLUTEN, YEAST, BROWN SUGAR, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: SALT, SOYBEAN OIL, VINEGAR, CULTURED WHEAT FLOUR, SUNFLOWER LECITHIN, ENZYMES, ASCORBIC ACID, SOY LECITHIN. MAY BE TOPPED WITH WHEAT BRAN. 831-110424

**CONTAINS: WHEAT, SOY.**

**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

24. The label for Nature's Own Sourdough Small Loaf bread states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, YEAST, WHEAT GLUTEN, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: FERMENTED RYE FLOUR, SOYBEAN OIL, SALT, SUGAR, FERMENTED WHEAT FLOUR, CULTURED WHEAT FLOUR, VINEGAR, ENZYMES, ASCORBIC ACID, SOY LECITHIN. 330-011025

**CONTAINS: WHEAT, SOY.**

**MANUFACTURED ON SHARED EQUIPMENT THAT ALSO PROCESSES PRODUCTS CONTAINING SESAME. MAY CONTAIN SESAME.**

25. The label for Nature's Own Hamburger Butter Buns states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, SUGAR, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: YEAST, BUTTER* (MADE FROM MILK), CULTURED WHEAT FLOUR, WHEAT GLUTEN, SALT, CALCIUM SULFATE, SESAME FLOUR, MONOCALCIUM PHOSPHATE, VINEGAR, DISTILLED MONOGLYCERIDES, ENZYMES, ASCORBIC ACID. 1926-022825
*A TRIVIAL SOURCE OF CHOLESTEROL.
**CONTAINS: WHEAT, MILK, SESAME.**

26. The label for Nature's Own Hot Dog Butter Buns states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, SUGAR, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: YEAST, BUTTER* (MADE FROM MILK), WHEAT GLUTEN, SALT, CULTURED WHEAT FLOUR, CALCIUM SULFATE, VINEGAR, DISTILLED MONOGLYCERIDES, MONOCALCIUM PHOSPHATE, SESAME FLOUR, ASCORBIC ACID, ENZYMES, SOY LECITHIN, WHEAT STARCH.
*A TRIVIAL SOURCE OF CHOLESTEROL. 1926-082322
**CONTAINS: WHEAT, SOY, MILK, SESAME.**

27. The label for Nature's Own 100% Whole Wheat Hamburger Buns states "Our Promise. NEVER any artificial preservatives, colors, or flavors" even though it contains ascorbic acid:




**INGREDIENTS:** WHOLE WHEAT FLOUR, WATER, WHEAT GLUTEN, BROWN SUGAR, YEAST, CONTAINS 2% OR LESS OF EACH OF THE FOLLOWING: SOYBEAN OIL, CULTURED WHEAT FLOUR, SALT, MONOGLYCERIDES, MONOCALCIUM PHOSPHATE, VINEGAR, SESAME FLOUR, ASCORBIC ACID, ENZYMES, SOY LECITHIN. TOPPED WITH WHEAT BRAN. 1806-082222
**CONTAINS: WHEAT, SOY, SESAME.**

**B. <u>Ascorbic Acid is a Preservative</u>**

28. The U.S. Food & Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added

to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

29. Ascorbic acid is a chemical form of vitamin C, which, pursuant to FDA regulations, is commonly used as a food preservative. In fact, the FDA lists "ascorbic acid" under the heading "Subpart D ¬ Chemical Preservatives." 21 C.F.R. § 182.3013.

30. Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness.

31. On its website, the FDA also classifies and identifies ascorbic acid as a preservative in its discussion of "Types of Food Ingredients."[2] The FDA lists "ascorbic acid" as a preservative that is commonly used in foods like the Products.[3] Under the "What They Do" table heading, the FDA elaborates that ascorbic acid helps "[p]revent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness:"[4]

| Types of Ingredients | What They Do | Examples of Uses | Ingredient Names That May Be Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

32. The FDA's classification of ascorbic acid as a preservative is further bolstered in a

[2] *See Types of Food Ingredients*, https://www.fda.gov/food/food-additives-and-gras-ingredients-information-consumers/types-food-ingredients (accessed June 30, 2025).

[3] *See Types of Food Ingredients*, https://www.fda.gov/food/food-additives-and-gras-ingredients-information-consumers/types-food-ingredients (accessed June 30, 2025).

[4] *Id.*

warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc. In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives ascorbic acid* and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[5]

33. The United State Department of Agriculture ("USDA") has also recognized that "[a]scorbic acid is most commonly used as a preservative to prevent enzymatic browning reactions that occur during processing and post-processing storage." [6]

34. Based on the foregoing, Defendants' use of ascorbic acid in its Products renders its "NEVER any artificial preservatives" representation false and misleading.

**C. <u>Defendants' Subjective Intent of Use is Immaterial</u>**

35. Ascorbic acid functions as a preservative in the Products, and this is true regardless of Defendants' subjective purpose or intent for adding it to the Products, such as to impart flavor.[7]

36. Even if the Products' ascorbic acid does not function as a preservative in the

---

[5] *See* October 6, 2010, FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc., available at http://web.archive.org/web/20101109083452/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm228663.htm (last accessed June 30, 2025).

[6] United States Department of Agriculture, *Ascorbic Acid*, at 3, available at https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last visited June 30, 2025).

[7] L. Somogyi, Chapter 13: *Direct Food Additives in Fruit Processing*, in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives").

Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so. See 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, tends to prevent or retard deterioration"); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.").[8]

37. As the USDA explains:

> Ascorbic acid is often added to processed foods for nutritional purposes because humans need to consume it as a part of a daily diet and because of the water-soluble nature of ascorbic acid's metabolization. … <u>However, its addition as a nutritional fortifier also provides preservative properties</u>. The preservative nature of the compound is derived from its reducing nature, through which it reacts with oxidized species (including radicals and molecular oxygen) to prevent enzymatic browning and food spoilage.

(internal citations omitted and emphasis added).[9]

**D. <u>The Products' Ascorbic Acid is Artificially Synthesized</u>**

38. The ascorbic acid contained in the Products is commercially produced, manufactured, and the result of extensive chemical processing. In fact, the USDA found that "all commercial sources of pure ascorbic acid are synthetically produced."[10] The reason for this is that "[w]hile ascorbic acid is naturally produced … its reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically derived." Defendants' Products contain commercial ascorbic acid; therefore, the

---

[8] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed June 30, 2025).

[9] United States Department of Agriculture, *Ascorbic Acid*, at 6, available at https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last visited June 30, 2025).

[10] United States Department of Agriculture, *Ascorbic Acid*, at 3, available at https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last visited June 30, 2025).

ascorbic acid in question is artificial.

**E. Defendants Exploit Consumer Demand for Preservative-Free Products**

39. Defendants' misrepresentation seeks to capitalize on consumers' preference for products with no preservatives. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[11]

40. According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, they often chose products with "No Preservatives" labels.

41. Accordingly, Defendants' misrepresentations are material to reasonable consumers. Reasonable consumers would attach importance to a representation that a product "NEVER any artificial preservatives" because research demonstrates that a majority of consumers place importance on preservative-free claims.

42. The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[12] Based on the foregoing, consumers are willing to purchase

[11] *See Free-From Food Trends-US-May 2015,* MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed June 30, 2025).

[12] *See Global Wellness Institute, The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025,* https://www.hospitalitynet.org/news/4108643.html (last accessed June 30, 2025).

and pay a premium for healthy non-preservative food items like the Products.

43. Defendants' misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendants' deceptive conduct.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Fed R. Civ. P. 23(a), (b)(1), and (b)(3). Specifically, the Class is defined as:

45. ***New York Class*****:** All persons who, within the three years preceding the filing of the original Complaint ("Class Period"), purchased one or more of the Products within the State of New York for personal, family or household purposes, and not for resale.

46. Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

47. Plaintiff reserves the right to amend or otherwise alter the above class definition presented to the Court at the appropriate time, or to add or eliminate classes and subclasses as appropriate, in response to facts learned through investigation, discovery, and the specific theories of liability, or otherwise.

48. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

49. **Numerosity:** The precise number of members of the Class is unknown to Plaintiff, but it is clear the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive distribution and sales network throughout New York, and the entire United States. However, members of the Class and their identities may be determined through discovery.

50. **Commonality and Predominance:** This Action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. All members of the Class were exposed to the deceptive practices of Defendants, as alleged herein. Included within the common questions of law or fact are:

a. Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendants made false and/or misleading statements to the Class and the public concerning the artificial preservatives in its Products;

d. Whether Defendants' false and misleading statements concerning its Products was likely to deceive the public;

e. Whether Defendants violated New York General Business Law §§ 349 and 350.

f. Whether Defendants committed a breach of express warranty;

g. Whether Plaintiff and the Class members are entitled to equitable and/or injunctive relief;

h. Whether Plaintiff and the Class members have sustained damage as a result of Defendants' unlawful conduct;

i. The proper measure of damages sustained by Plaintiff and Class members; and

j. Whether Defendants were unjustly enriched by its deceptive practices.

51. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendants' misbranded Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class members sustained similar injuries arising out of Defendants' conduct. Plaintiff's and Class Member's claims arise from the same practices and course of conduct and are based on the same legal theories. Further, there are no defenses available to Defendants that are unique to Plaintiff's claims.

52. **Adequacy:** Plaintiff is an adequate representative of the members of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in the prosecution of complex class action litigation, including complex questions that arise in consumer protection litigation. Plaintiff and her counsel will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

53. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could

not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

54. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class's claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

55. **Declaratory and Injunctive Relief:** Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here Defendants have engaged in conduct that has misled consumers about the presence of artificial preservatives in its Products. Since Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct. Plaintiff would purchase the Products again if the label was changed to reflect that the Products contained artificial preservatives.

56. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy as above stated.

## CAUSES OF ACTION

### COUNT I
### Violation of New York G.B.L. § 349 *et seq.*
### (On Behalf of Plaintiff and the Class)

57. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

58. Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendants.

59. This claim is brought pursuant to the laws of the State of New York.

60. Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

61. Defendants are a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

62. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

63. Defendants made false and misleading statements by marketing the Products as containing "NEVER any artificial preservatives," when the Products contain ascorbic acid.

64. In doing so, Defendants engaged in deceptive acts or practices in violation of GBL § 349.

65. Defendants' deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendants knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products in fact do not contain any artificial preservatives.

66. Defendants' deceptive acts and practices were directed at consumers.

67. Defendants' misleading conduct concerns widely purchased consumer products and affects the public interest. Defendants' conduct includes unfair and misleading acts and practices that have the capacity to deceive consumers and are harmful to the public at large. Defendants' conduct is misleading in a material way because they fundamentally misrepresent that Products do

contain artificial preservatives.

68. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendants' GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (containing no artificial preservatives) and the Products as actually sold (containing artificial preservatives).

69. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendants' unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

**COUNT II**
**Violation of New York G.B.L. § 350**
**(On Behalf of Plaintiff and the Class)**

70. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the New York Subclass against Defendants.

72. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

73. New York General Business Law Section 350-a(1) defines false advertising as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining

whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

74. Defendants' labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendants advertised the Products as containing a "NEVER any artificial preservatives" when in fact the Products contain ascorbic acid, which is an artificial preservative.

75. Plaintiff understood Defendants' misrepresentations to mean that the Products in fact contained no artificial preservatives, as reasonable consumers understand the term.

76. Defendants' misrepresentations are consumer-oriented and were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

77. Defendants' misrepresentations have resulted in consumer injury or harm to the public interest.

78. As a result of the misrepresentations, Plaintiff and New York Subclass members have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

79. By reason of the foregoing and as a result of Defendants' conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover

their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Class)**

80. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

81. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

82. Defendants, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contained no artificial preservatives.

83. Defendants' representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Class.

84. However, the Products do not conform to Defendants' representations and warranties because the Products contain ascorbic acid, which is an artificial preservative. By falsely representing the Products in this way, Defendants breached express warranties.

85. As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and members of the Class have been injured and harmed in an amount to be proven at trial. Had Plaintiff and members of the Class known the Products did in fact contain artificial preservatives, they would not have purchased the Products, or would have paid substantially less for them.

86. Prior to filing the initial complaint in this action, Defendants were served via certified mail with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607.

**COUNT IV**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and the Class)**

87. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

88. Plaintiff brings this claim individually and on behalf of all members of the Class against Defendants. Upon certification, the Class will consist of more than 100 named Plaintiffs.

89. The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

90. The Products are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

91. Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

92. Defendants are a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) and 2301(5).

93. In connection with the sale of the Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), that the Products contain no artificial preservatives. Specifically, Defendants represented in writing that there are "NEVER any artificial preservatives" in the Products.

94. In fact, the Products contain ascorbic acid, which is an artificial preservative.

95. By reason of Defendants' breach of warranty, Defendants violated the statutory rights due to Plaintiff and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.

§§ 2301 *et seg*, thereby damaging Plaintiff and Class Members.

96. Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products or would have paid substantially less for them if they knew of Defendants' false and misleading Representations.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

97. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

98. Defendants, through their misleading representations and omissions, enticed Plaintiff and members of the Class to purchase the Products.

99. Plaintiff and Class members conferred a benefit on Defendants by purchasing the Products.

100. By its wrongful acts, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

101. Defendants benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendants' wrongful conduct.

102. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiff and the Class as the result of their deceptive marketing and advertising practices.

103. Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging all profits, benefits and other compensation obtained by Defendants due to its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed class the following relief against Defendants:

(a) For an order certifying the New York Class and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b) For an order declaring that Defendants' conduct violates the statutes referenced herein;

(c) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For an order requiring Defendants to undertake a corrective advertising campaign;

(g) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(h) Granting such other and further relief as many be just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 1, 2025

Respectfully submitted,

**KAMBERLAW, LLC**

By: */s/ Frederick J. Klorczyk III*
Frederick J. Klorczyk III

Frederick J. Klorczyk III
305 Broadway, Suite 713
New York, NY 10007
Tel: (646) 964-9604
Fax: (212) 202-6364
Email: fklorczyk@kamberlaw.com

*Attorneys for Plaintiff*